(78 Misc. Rep. 584.)

### KELLY v. MILLER, Borough President, et al.

(Supreme Court, Special Term, New York County. December, 1912.)

1. MUNICIPAL CORPORATIONS (§ 277*)—SEWERS—CONSTRUCTION—GOVERNING POWER.

Under Greater New York Charter (Laws 1901, c. 466) § 383 (9), providing for sewer construction, the governing power with reference to the construction of a sewer system and the maintenance of sewers is in the borough president, who has implied power to provide for sewer outlets within or without the corporate limits of his borough.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 732; Dec. Dig. § 277.*]

2. MUNICIPAL CORPORATIONS (§ 993*)—SEWERS—CONSTRUCTION—INJUNCTION —TAXPAYER'S ACTION.

A taxpayer of the city of New York was not entitled to restrain a sewer connection by the borough of the Bronx with a sewer in the city of Yonkers at the sole expense of the petitioners, on the condition that the connection might be discontinued by the city of New York at its election; it appearing that it was of great benefit to the latter city.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2158–2161; Dec. Dig. § 993.*]

Taxpayer's action by Hugh P. Kelly against Cyrus C. Miller, as President of the Borough of the Bronx, City of New York, and others. Dismissed.

John T. Little, of New York City, for plaintiff.

Archibald R. Watson, Corp. Counsel, of New York City, for defendant City of New York.

Walsh, Wallin, Beckwith & Edie, of Yonkers, for defendants Gorton, Lynch, and Larkin.

COHALAN, J. Plaintiff, a taxpayer, brings this action under chapter 301 of the Laws of 1892 against the defendant Miller, as president of the borough of the Bronx, and three other defendants, to restrain them from allowing a connection of the sewer in Martha avenue, in the city of Yonkers, to be made with a sewer in the borough of the Bronx. The facts are undisputed, and only questions of law are at issue.

The plaintiff contends that the borough president was without power to permit a connection which would allow the residents of the city of Yonkers to use a sewer of the borough of the Bronx, that in issuing such a permit his action was illegal and void, and that this court should issue an injunction restraining the use of the connection by the defendants Gorton, Lynch, and Larkin. It appears that the permit was granted to construct the line of sewer at the expense of the petitioners and without expense to the city of New York, and upon condition that the connections might be discontinued by the authorities of the city. The evidence for the city showed that the permit was a temporary one and inured greatly to the benefit of the city of New York. It appears that the entire neighborhood at the point of connection slopes and drains towards the Bronx river, and that the drain in Martha avenue, from

241st street to 242d street, and in 242d street from Martha avenue to Katonah avenue, was included in the general plan for the sewers of that district.

The necessity for this plan is shown from the figures giving the various elevations of the street intersections. The elevation of the surface of East 242d street, at the north line of the city of New York, is 21 feet lower than East 252d street at Mt. Vernon avenue. In order to obtain sewerage of 241st street, from Katonah avenue to the city line, it would have been necessary for the city, at its own expense, to have obtained permission from the city of Yonkers, and to have constructed the sewer in the remainder of 242d street to Martha avenue, and thence southerly in Martha avenue to 242d street.

The request by the defendants Gorton, Lynch, and Larkin to the borough president for permission to construct, at their own expense, these lines of sewers, furnished the opportunity to the city to obtain this construction without expense and at the same time to provide a sewer which the city itself would otherwise have been compelled to build at a considerable expenditure of money. In view of this situation, and the additional fact that the outlet sewer as built is amply sufficient to take care of the small additional sewerage that may come from the small territory connected with it in the adjoining municipality, there can be no reasonable objection to the permit as granted by the borough president. There has been no waste of the city's funds or of the city's property. Moreover, sewer outlets beyond the city limits are not necessarily illegal. Dillon, Mun. Corp. § 776.

[1] The governing power with respect to the construction of a drainage and sewerage system and the maintenance of sewers and drains is lodged in the borough president. Greater New York Charter (Laws 1901, c. 466) § 383, subd. 9. In addition to the express powers therein granted, he has implied powers to provide for sewer outlets, even outside of the corporate limits of his borough, and he may exercise this authority beyond the corporate limits for a public purpose. Matter of Mayor, 99 N. Y. 584, 2 N. E. 642; Dillon, Mun. Corp. § 1148.

[2] In view of the fact that no waste has been shown, and that the borough president, in granting the permit for a temporary sewer, acted within his lawful powers, I am of opinion that the complaint should be dismissed, without costs.

Complaint dismissed, without costs.